**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 92-8156
_____

United States of America,

Plaintiff-Appellee,

VERSUS

Jerry Don Holley,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

(March 9, 1993)

Before WISDOM, and DUHÉ, Circuit Judges and HAIK[1], District Judge.

DUHÉ, Circuit Judge:

Defendant, Jerry Don Holley, was convicted of two counts of perjury. He contends on appeal that his rights under the Speedy Trial Act, 18 U.S.C. § 3161, were violated, that his double jeopardy rights were violated, and that numerous evidentiary errors were made by the district court. Finding no reversible error, we affirm.

## Background

Appellant, Jerry Don Holley, was a director and chairman of the board of Peoples Savings and Loan Association of Llano, Texas ("Peoples Savings"). Holley also owned a controlling stock

---

[1] District Judge of the Western District of Louisiana, sitting by designation.

1

interest and served on the senior loan committee of Peoples Savings. He actively solicited business on behalf of Peoples Savings.

In 1985, Holley entered into an arrangement with Eileen Marcus to acquire real estate. Under the arrangement, Marcus was to find property to purchase and resell at a profit. Peoples Savings was to provide the financing. Marcus would not provide any financing or furnish a financial statement.

That summer, Marcus contracted to buy a shopping center, Southwest Parkway Plaza, for $2,400,000. The contract required that the buyer deposit with Safeco Title Company an irrevocable letter of credit for $25,000 as earnest money. Paulette Hubbard, an escrow agent for Safeco, received the contract and the letter of credit issued by Peoples Savings. Some time later Hubbard noticed that the letter of credit lacked a signature.

Hubbard spoke to Holley about this on October 11, 1985. They agreed to meet on the following Monday in order for Holley to sign the letter of credit. On Monday, Holley apparently told his secretary that a woman would visit the office with a letter to be signed and that the secretary should sign it using her mother's maiden name. He then left the office. When Hubbard arrived, Holley's secretary signed the letter using a fictitious name.

When Marcus did not close on the purchase of Southwest Parkway Plaza, the seller failed to collect on the letter of credit. People Savings refused to honor the letter of credit because it was not entered in Peoples Savings' register of letters of credit and

2

the identity of the signator was unknown.

In January 1988, Holley filed for bankruptcy. Peoples Savings filed an adversary complaint in Holley's bankruptcy case to establish and determine dischargeability of Holley's alleged debts to Peoples Savings. The adversary complaint alleged that as a shareholder, director, and chairman of the board of Peoples Savings, Holley engaged in fraud or defalcation while acting in a fiduciary capacity. Holley was deposed in connection with this adversary proceeding. Based on statements he made in the course of that deposition about the letter of credit, Holley was indicted on two counts of perjury.

In 1990, after a jury trial, Holley was convicted on both counts. On appeal, this Court held that the failure to give a unanimity instruction was reversible error and vacated and remanded the case to district court. On retrial, Holley was again convicted on both counts. Holley appeals this conviction.

Discussion

I. Speedy Trial Act.

Holley complains that the trial court should have granted his motion to dismiss the indictment for violation of the Speedy Trial Act. On October 24, 1991, after remand, Chief Judge Bunton ordered the case transferred to Judge Belew for retrial on January 21, 1992. At that time, the district court declared that the time between the issuance of our mandate and the rescheduled trial was excluded from the time within which the defendant must be brought to trial under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8).

Holley made no objection.

Section 3161(h)(8) of the Speedy Trial Act referred to by the district court applies to continuances and not to retrials following appeal. The Government moved for clarification of the court's scheduling order under Federal Rule of Criminal Procedure 36.[2] Specifically, the government moved the court to set forth the basis, on the record, for its findings that the ends of justice served by the setting of a trial date more than seventy days from the date of the court of appeals mandate outweighed the best interest of the public and the defendant in a speedy trial as required by § 3161(h)(8). Alternatively, the government asked the court to clarify and correct its order to reflect reliance on 18 U.S.C. § 3161(e), relating to cases retried following an appeal. The judge accordingly amended his original scheduling order citing 18 U.S.C. § 3161(e). We review the facts supporting a Speedy Trial Act ruling using the clearly erroneous standard, and the legal conclusions, de novo. United States v. Ortega-Mena, 949 F.2d 156, 158 (5th Cir. 1991).

Holley argues that the amended order, specifying reasons for the delay, states facts amounting to nothing more than crowded dockets. He argues that the law is settled and that neither a congested calendar nor the pressure of judges' other business can

---

[2]  Rule 36 states "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."

4

excuse non-compliance with the Speedy Trial Act.[3]  We disagree.

Though it originally cited to Section 3161(h)(8), the court corrected its order to properly cite to § 3161(e).  Section 3161(e) states

> . . . If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified n this section.

Section 3161(e) gives the trial court greater flexibility in setting cases for trial following appeal than is provided in the initial indictment-to-trial cases.  The cases relied upon by Holley discuss violations of the Speedy Trial Act under § 3161(h)(8).  We believe that those cases do not apply to this situation.  As stated in the district court's amended order, between the date the case was originally tried and the date the case was subsequently remanded, the trial judge became involved in a lengthy seven week trial.  Additionally, the resident judge in Waco, where the case was to be tried, recused himself.  Finally, at the time Holley was to be retried, the Western District of Texas was four judges short of the ten judges authorized by Congress.  As a consequence of these conditions resulting from the passage of time, there was no practical way to try the case within seventy days and the court

---

[3]  Holley cites <u>U.S. v. Ortega-Mena</u>, 949 F.2d 156 (5th Cir. 1991).

5

extended the trial date.  Holley was tried within 180 days from the date this Court issued its mandate.  We believe that Holley was not prejudiced by the delay, and therefore his rights under the Speedy Trial Act were not violated.

II. Double Jeopardy Claim.

Holley next contends that his double jeopardy rights under the Fifth Amendment were violated by the declaration of a mistrial. One day after the jury was sworn, a juror became ill and the judge declared a mistrial.  Holley refused to continue trial with only eleven jurors, and did not object to the mistrial order on double jeopardy grounds.  The trial judge, after a discussion with the juror's doctor, determined that the woman would not be able to continue.  Defense counsel asked the court to wait an hour before discharging the jury to determine whether the juror's health would improve.  The court responded that the juror's illness would not get better, and instructed defense counsel to confer with his client regarding whether he wished to continue the trial.  The record does not reflect Holley's response, however, a new jury was empaneled that afternoon and there were no objections by counsel.

The double jeopardy clause protects a defendant's right to have his trial completed by a particular tribunal.  Crist v. Bretz, 437 U.S. 28, 36 (1978).  Nonetheless, the double jeopardy clause is not an absolute bar to reprosecution once the jury has been empaneled and sworn.  Without the defendant's consent, however, reprosecution is more difficult.

A retrial following a sua sponte declaration of mistrial over

6

defendant's objection is not prohibited under the fifth amendment where the court determines that the declaration of a mistrial is a "manifest necessity." United States v. Dinitz, 424 U.S. 600, 606-07 (1976). For example, manifest necessity for mistrial exists where judge or juror cannot attend because of illness or death. Cherry v. Director, State Bd of Corrections, 635 F.2d 414, 419 (5th Cir. Jan. 1981), cert. denied, 454 U.S. 840 (1981).

This Court will uphold the trial court's finding of "manifest necessity" if the court exercised "sound discretion" in making that determination. United States v. Bauman, 887 F.2d 546, 549 (5th Cir. 1989), cert. denied, Talamas v. United States, 493 U.S. 1077 (1990). As the trial court is most familiar facts surrounding the mistrial, the judge's mistrial order is given the "highest degree of respect." Id. at 549.

Holley primarily argues that no manifest necessity existed for the declaration of the mistrial. He contends that the circumstances did not warrant a mistrial. Obviously, the court disagreed, and so do we. A mistrial was declared only when it became clear that the sick juror would not be able to continue. Holley declined to continue the trial with only eleven jurors and made no objection to the court's sua sponte declaration of a mistrial. The clear inference from defense counsel's actions was that he acquiesced to proceeding with the new trial. Even without Holley's acquiescence, the judge exercised sound discretion in determining that manifest necessity existed for the declaration of a mistrial.

7

III. Materiality.

Holley also claims that the evidence was insufficient to support the jury's verdict because the government failed to produce sufficient evidence of the materiality of the alleged perjury, an essential element of the offense charged. This issue was raised by Holley in his first appeal in this case. See United States v. Holley, 942 F.2d 916, 923 (5th Cir. 1991). Holley argues that the Court should overturn its previous decision regarding materiality because of additional evidence that was adduced in this second trial. After Holley's first trial, but prior to this Court's decision on appeal, the FDIC dismissed it's bankruptcy claims against Holley. He contends that the FDIC admitted that Peoples Savings did not have a valid claim in bankruptcy when it voluntarily dismissed the adversary proceeding. Because the perjurious statements related to the dismissed claim, Holley argues that the perjurious statements could not be material to Holley's bankruptcy proceeding, and thus the government failed to prove an essential element of perjury. At the time we rendered our decision on Holley's first appeal, however, the fact that Peoples Savings' claims had been dismissed was considered. Holley, 942 F.2d at 923 n. 8. Therefore, reconsideration of this issue is foreclosed by this Court's decision in the previous appeal.

As to Holley's remaining points of error, we have carefully reviewed all pertinent parts of the record, and given due consideration to the briefs and arguments of counsel, but we have found, on the particular facts before us, no reversible error.

8

For the foregoing reasons, the judgment of the district court is

AFFIRMED.