On September 12, 1984, the appellant, Samuel James Nickerson, after a jury trial, was convicted on two counts of robbery in the first degree, in violation of § 13A-8-41, Code of Alabama
1975. On September 21, 1984, the appellant pleaded guilty to and was subsequently convicted on two counts of robbery in the second degree, in violation of § 13A-8-42, Code of Alabama
1975. The appellant was sentenced to life imprisonment on each conviction, pursuant to the Habitual Felony Offender Act.
The appellant appealed his September 12, 1984, convictions for first degree robbery. On May 28, 1987, this Court remanded the appellant's case concerning those convictions to the trial court for that court to conduct an evidentiary hearing to determine whether the State had exercised its peremptory challenges in a racially nondiscriminatory manner. Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At the hearing held on October 13, 1987, the trial court found that the State had failed to supply race-neutral reasons for its peremptory strikes and ordered that the appellant be granted a new trial. On October 26, 1989, the trial judge made the following notation in the appellant's file: "Close this file, no further action necessary. Def. in pen on other cases."
On March 6, 1992, the appellant filed a petition for a writ of mandamus with the Alabama Supreme Court, requesting that the trial court be ordered to schedule a new trial. On March 10, 1992, the appellant filed a petition for a writ of mandamus with this court. The Alabama Supreme Court granted the writ and trial was set for May 11, 1992. This court, in an order issued on March 16, 1992, instructed the State, pursuant to Rule 21, A.R.Cr.P., to answer and to show cause why the appellant had not been retried. The State's answer was not made a part of the record.
On May 11, 1992, the appellant pleaded guilty to both counts of robbery in the first degree and was sentenced to 20 years' imprisonment on each count. The sentences were to run concurrently with the sentence imposed in the appellant's second degree robbery convictions received on September 21, 1984. When he entered his guilty pleas, the appellant reserved the right to appeal the issue of the denial of a speedy trial.
The issue in this case is whether a defendant has a constitutional right to a speedy trial when he is seeking a retrial and, if so, whether in this case that right was violated.
In other jurisdictions, where a defendant has claimed that he was denied his right to a speedy trial on retrial or on appeal and the claim was not based on an existing statute or on the federal Speedy Trial Act but rather on constitutional grounds, courts have consistently analyzed such claims pursuant to the *Page 62 
guidelines in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972). See e.g., United States v. Bizzard,674 F.2d 1382; Millard v. Lynaugh, 810 F.2d 1403 (5th Cir. 1987), cert. denied, 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 81
(1987); United States v. Johnson, 732 F.2d 379, 381-82 (4th Cir. 1984), cert. denied, 469 U.S. 1033, 105 S.Ct. 505,83 L.Ed.2d 396 (1984); United States v. Antoine, 906 F.2d 1379,1382 (9th Cir. 1990), cert. denied, 498 U.S. 963,111 S.Ct. 398, 112 L.Ed.2d 407 (1990); Coe v. Thurman, 922 F.2d 528, 532
(9th Cir. 1990); Roundtree v. State, 192 Ga. App. 803,386 S.E.2d 548 (Ga.App. 1989); Ake v. State, 778 P.2d 460
(Okla.Cr.App. 1989); Mitchell v. State, 572 So.2d 865 (Miss. 1990); Lukehart v. State, 32 Ark. App. 152, 798 S.W.2d 117
(1990); State v. Ferguson, 576 So.2d 1252 (Miss. 1991);Harrison v. State, 843 S.W.2d 157 (Tex.App. 1992).
This Court, in State v. Clay, 577 So.2d 561 (Ala.Cr.App. 1991), considered an issue analogous to the one presented here. Clay initially pleaded guilty to and was convicted of theft of services in the second degree, in violation of § 13A-8-10.2,Code of Alabama 1975. This Court affirmed that conviction in an unpublished memorandum. See Clay v. State, 553 So.2d 137
(Ala.Cr.App. 1989). The Alabama Supreme Court reversed this court's judgment and remanded the cause with instructions that this court remand to cause to the trial court. See Ex parteClay, 562 So.2d 1307 (Ala. 1990). Pursuant to the Supreme Court's instructions, this court remanded the cause to the trial court for that court to determine whether there had been a plea agreement between Clay and the State that had not been honored at Clay's sentencing hearing. The trial court found, based on facts stipulated to by the State and Clay, that a plea agreement between the parties existed and that that agreement had not been followed at sentencing. Thereafter, Clay was allowed to withdraw her initial plea of guilty. Approximately three months later, the trial court dismissed the case, stating that Clay had been denied her right to a speedy trial. The State appealed the dismissal. On appeal, this Court, after reviewing the trial court's dismissal of Clay's case on speedy trial grounds, held that Clay had not been denied the right to a speedy trial because there was "no one delay which was presumptively prejudicial." That decision was based on Barkerv. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This Court reversed the judgment and remanded the cause to the trial court with instructions that that court reinstate the charge against Clay. In reaching this decision, this Court divided the time from the date of the indictment until the date of dismissal into the following four periods for the purpose of analyzing whether the delay during any particular period was presumptively prejudicial: (1) the time from the indictment until Clay entered her guilty plea; (2) the time from the guilty plea until Clay was sentenced; (3) the time between the notice of appeal until the date the final judgment of remand was issued; and (4) the time the final judgment of remand was issued until the date the trial was scheduled and the case was dismissed.
For purposes of addressing the issue presented here, however, only the fourth time period considered in Clay is germane. In this case, like in Clay, this Court must determine whether the delay that occurred from the time the judgment in the appellant's original case was reversed on appeal until he entered his guilty plea (i.e., May 11, 1992) was presumptively prejudicial. See Judge Bowen's special concurrence in State v.Clay, wherein he stated:
 "[T]he only period of time relevant in this case is the period of time from the date the appellant's case was reversed on appeal until the date on which she would have been tried had the circuit court not dismissed the cause for denial of a speedy trial. That is clearly the period of time considered under the Federal Speedy Trial Act when a case is retried after appeal. See 18 U.S.C. § 3161(e) (1988). See generally Project: Nineteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1988-1989, 78 Geo.L.J. 699, 991 (1990)."
577 So.2d at 564.
Under the Speedy Trial Act, the period that is to be measured in cases involving a retrial begins with the " 'action occasioning the retrial.' " United States v. Rivera, *Page 63 844 F.2d 916, 919 (2d Cir. 1988). The Speedy Trial Act provides:
 " 'If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final.' "
Id. Thus, where an appellate court's action requires a retrial, the time period begins when the appellate court issues its mandate. U.S. v. Kington, 875 F.2d 1091, 1109 (5th Cir. 1989).
Moreover, "[t]he time between a conviction and a reversal which requires retrial is clearly not counted for speedy trial purposes. See United States v. Ewell, 383 U.S. 116,86 S.Ct. 773, 15 L.Ed.2d 627 (1966)." United States v. Bizzard,674 F.2d 1382 (11th Cir. 1982), cert. denied, 459 U.S. 973,103 S.Ct. 305, 74 L.Ed.2d 286 (1982). Other states that base their analysis of the speedy trial issue in situation on the constitutional standards set forth in Barker v. Wingo,407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), also begin the period on the date of reversal, where appellate action requires the retrial. State v. Ferguson, 576 So.2d 1252 (Miss. 1991).
However, in this case, it was not the appellate court's remand that constituted the action requiring retrial and triggered the beginning of that period for speedy trial purposes, but rather the trial court's determination that the State had failed to supply race-neutral reasons for its peremptory challenges and that the appellant was entitled to a new trial (October 13, 1987).
Furthermore, in this case, the appellant was clearly faced with a pending charge after the remand, despite the notation by the trial court in the appellant's file. Cf. United States v.Mize, 820 F.2d 118, 121 (5th Cir. 1987), cert. denied,484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987). In United States v.Mize, supra, the appellant's conviction was reversed on appeal, the appellate court noting that a retrial was prohibited by the Double Jeopardy Clause of the Fifth Amendment. The retrial did not begin until 330 days after the appellate court's decision, well outside the 70-day limit provided for in the Speedy Trial Act. The court, in that case, held that the purpose of the Speedy Trial Act was to ensure that a defendant's constitutional right to a speedy trial is upheld and that "[t]his right is implicated only when a defendant is facing pending and live charges, whether by an indictment, an information, or a complaint." The court further stated, "[I]f the indictment is dismissed or the charges are otherwise dropped, the defendant is no longer protected by the Speedy Trial Clause, nor does the Speedy Trial Clause protect the defendant threatened with reindictment and retrial, even if that threat is a matter of public record and virtually certain to materialize." United States v. Mize, supra, at 121 (footnotes omitted). In this case, despite the trial court's notation in the appellant's file, the charge remained pending by virtue of the trial court's ruling that the appellant was entitled to a new trial. Thus, in the present case, the action requiring the retrial occurred on October 13, 1987, when the trial court granted the appellant a new trial.
Next, it must be determined if the delay of approximately four and one half years between the trial court's ordering a new trial and the entry of the appellant's guilty plea violated his constitutional right to a speedy trial. In Barker v. Wingo,407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court stated:
 " '[T]he right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate.' (Footnote omitted.)
 "Thus, an 'inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case. . . .' [Barker, at 522] . . . 92 S.Ct. at 2188. In adopting 'a balancing test, in *Page 64 
which the conduct of both the prosecution and the defendant are weighed,' id. at 530, 92 S.Ct. at 2192, the Barker court identified 'some of the factors' which courts should assess in determining whether a particular defendant has been denied his right to a speedy trial: (a) length of delay; (b) the reasons for the delay; (c) the defendant's assertion of his right; and (d) prejudice to the defendant. Id."
Hayes v. State, 487 So.2d 987, 991 (Ala.Cr.App. 1986).
 (I) Length of Delay
In United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455,459, 30 L.Ed.2d 468 (1971), the Supreme Court held: "The protection of the Sixth Amendment is triggered when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." The court, in Marion, further held: " '[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of theSixth Amendment.' " Id. at 320, 92 S.Ct. at 463. Moreover, it is well settled that whether the length of delay is presumptively prejudicial is "necessarily dependent upon the peculiar circumstances of the case." Barker v. Wingo, supra,407 U.S. at 531, 92 S.Ct. at 2192. See also Kelley v. State,568 So.2d 405 (Ala.Cr.App. 1990); Ex parte Carrell,565 So.2d 104, 107-08 (Ala. 1990), cert. denied, 498 U.S. 1040,111 S.Ct. 712, 112 L.Ed.2d 701 (1991).
Although Barker acknowledged that the seriousness and complexity of the offense should be considered in determining whether the delay was reasonable, here, the delay of over four and one-half years is clearly excessive, given the offense charged. This was not a case that ordinarily could require extra time to prepare for trial. Moreover, the State had previously been prepared to go to trial in this case and was thus familiar with the appellant's case. Because we conclude that the delay was presumptively prejudicial, this factor must weigh against the prosecution.
 (II) Reasons for Delay
Because of the "peculiar circumstances" surrounding this case, we must inquire as to why the appellant was not tried earlier. The State offered no explanation to the trial court for the delay, other than to say that the trial judge who presided over the original trial and the subsequent remand closed the appellant's file on October 26, 1989. However, there remained a period of two years during which the State could have tried the appellant (between October 13, 1987, and October 26, 1989). The record indicates that the appellant was incarcerated for other convictions that had occurred on September 21, 1984. The State has presented no legitimate reason for the delay, and none of the delay appears attributable to the appellant. See State v. Woods,600 So.2d 425, 427 (Ala.Cr.App. 1992).
 (III) Assertion of the Right "In determining this factor, we are guided by the following observations of the former Fifth Circuit Court of Appeals in Prince v. Alabama, 507 F.2d 693, 702-03 (5th Cir. 1975), cert. denied, 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975):
 " 'While the Court [in Barker] indicated that the absolute failure of the defendant to assert his right would "make it difficult for [him] to prove that he was denied a speedy trial," the Court emphasized that the burden was upon the prosecution to show that the failure of the defendant to assert his right was a knowing failure:
 " ' "In ruling that a defendant has some responsibility to assert a speedy trial claim, we do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made. 407 U.S. at 526 [92 S.Ct. at 2191]. . . ."
 " '. . . [W]e are further guided by Barker and by the Court's subsequent decision in Strunk v. United States, 1973, 412 U.S. 434
[93 S.Ct. 2260, 37 L.Ed.2d 56 (1973)]. . . . In Barker, the Court noted that a flexible approach to determin[ing] *Page 65 
whether the defendant had asserted his speedy trial right
 " ' "would permit . . . a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. 407 U.S. at 526
[92 S.Ct. at 2191]. . . ."
 " 'In Strunk, the Court gave an implicit indication that the focus of the assertion inquiry might properly be directed toward the question whether the prosecution is put "on notice" of the defendant's speedy trial claim. . . .
 " 'We interpret these rulings as an indication that the courts should take a liberal view of convict-defendant's attempts to contact the prosecutors and courts in other jurisdictions regarding charges pending against them there. Such an approach would be consistent both with the concept that chargeable failure to assert a constitutional right must be knowing and intelligent, Johnson v. Zerbst [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)], and with the realities of a defendant's incarceration, often distant from the prosecuting state and without the effective assistance of counsel.' "
Hayes, 487 So.2d at 993-94 (emphasis added).
Although the appellant did not assert his right until over four years after the trial court had granted him a new trial, the State presented no evidence that the appellant's failure to assert his right earlier was a "knowing failure." The State contends that this factor should be weighed heavily against the appellant because, it says, "had he invoked this right as he eventually did in 1992, then he would have had his trial within two months of his filing of the mandamus."
 "We recognize that a defendant has 'some responsibility to assert a speedy trial claim.' Barker, 407 U.S. at 529, 92 S.Ct. at 2191. However, we also recognize that '[a] defendant has no duty to bring himself to trial; the State has that duty. . . .' Id. at 527, 92 S.Ct. at 2190 (footnote omitted). This responsibility is 'out of fairness to the accused and to protect the community interests in a speedy trial.' Dickey v. Florida, 398 U.S. 30, 50, 90 S.Ct. 1564, 1575, 26 L.Ed.2d 26
(1970) (Brennan, J., concurring). [Defendant's] silence, under the circumstances, does not render his position less viable. We think that the response of the State must be considered and, in fact, overshadows all else."
Hayes, supra, at 994.
Because the State has failed to prove a "knowing failure" by the appellant to assert his right, we do not consider this factor to weigh heavily against the appellant.
 (IV) Prejudice
The appellant, at the hearing on his motion to dismiss based on speedy trial grounds argued that, although a transcript had been made of his previous trial, his memory had weakened because of the passage of time. The State argued that the appellant had suffered no prejudice because, it notes, he was incarcerated on two other terms of life imprisonment. On appeal, the appellant contends that "[p]rior to his new sentence, his parole date was September 1, 1992. Now it has been changed to May 1, 1998." In effect, he maintained that he lost six years due to the government's delay." The appellant further argues that he lost the right to serve his sentences concurrently. We consider these allegations on appeal, although they were not presented to the trial court, because in all likelihood these were facts not in existence at the time of the motion hearing.
 "The Alabama Court of Criminal Appeals has adopted the delineation by the former United States Court of Appeals, Fifth Circuit, of the circumstances in which no showing of prejudice is required. See, e.g., Wilson v. State, 407 So.2d [584] at 588; Turner v. State, 378 So.2d [1173] at 1179. See also Prince v. State, 354 So.2d 1186, 1192 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 1193 (Ala. 1978). The former Fifth Circuit held that 'there must be some point of coalescence of the other three factors in a movant's favor, at which prejudice — either actual or presumed — becomes totally *Page 66 
irrelevant.' Hoskins v. Wainwright, 485 F.2d 1186, 1192 (1973). See also United States v. Dennard, 722 F.2d 1510, 1513 (11th Cir. 1984); United States v. Avalos, 541 F.2d [1100] at 1116; Prince v. Alabama, 507 F.2d at 706-07. The rationale for dispensing with the prejudice requirement is set forth in Turner v. Estelle, 515 F.2d 853, 858-59 (5th Cir. 1975), cert. denied, 424 U.S. 955, 98 S.Ct. 1431, 47 L.Ed.2d 361 (1976), as follows:
 " 'The reason for dispensing with the prejudice requirement entirely when the other three factors point heavily toward a violation of speedy trial is deterrence: the prosecution should not be permitted to engage in inexcusable misconduct on the hope that the defendant will not be able to make out a case of prejudice. Where such misconduct has occurred, the state cannot complain that the legitimate interests of its criminal justice system, being pursued in good faith, are being sacrificed because of an honest mistake in a case in which no ultimate harm has been done.' "
Hayes, supra, at 995-96.
Additionally, in Aaron v. State, 497 So.2d 603, 604
(Ala.Cr.App. 1986), this Court held:
 "An accused's right to speedy trial remains undiminished even when he is already serving a prison sentence. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Byrd v. Martin, 754 F.2d 963 (11th Cir. 1985); Smith v. State, 409 So.2d 958 (Ala.Cr.App. 1981).
 " 'At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.
 " 'And while it might be argued that a person already in prison would be less likely than others to be affected by "anxiety and concern accompanying public accusation," there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. Cf. Klopfer v. North Carolina, supra, 386 U.S. [213] at 221-222, 87 S.Ct. [988] at 992-993 [18 L.Ed.2d 1 (1967)]. . . .
 " '. . . And, while "evidence and witnesses disappear, memories fade, and events lose their perspective," a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time.' Smith, 393 U.S. at 378-80, 89 S.Ct. at 577-78, 21 L.Ed.2d at 611-12."
Additionally, in Ex parte Carrell, supra, the Alabama Supreme Court held:
 "Although ordinarily a mere assertion of a loss of memory is not enough of a showing of prejudice to support a finding that a defendant has been denied due process, where the delay is excessive and is the result of unexcused inaction by the State, the delay is prima facie prejudicial."
Id. at 108.
In the instant case, the appellant has suffered prejudice by the loss of an opportunity to serve his sentence concurrently with a sentence he was serving for his prior convictions. Moreover, he is now subjected to a delayed parole date because of the State's inaction in bringing him to trial.
 "Article I, § 6, of the Alabama Constitution and the Sixth Amendment to the United States Constitution, will not sanction such prosecutorial conduct." Turner v. State, 378 So.2d 1173, 1178
(Ala.Cr.App. 1979).
Under similar circumstances, other jurisdictions have held that defendants' rights to a speedy trial were violated on retrial. In *Page 67 State v. Ferguson, 576 So.2d 1252 (Miss. 1991), a defendant's constitutional right to a speedy trial was held to have been denied by a presumptively prejudicial delay of 288 days between an appellate reversal and retrial. In that case, the prosecution offered only a circuit court's docket as a basis for the delay and the Court held that no evidence in the record justified that delay or rebutted the presumption of prejudice. Moreover, in that case the defendant had made a demand for speedy retrial, but the prosecution did nothing until the defendant moved to dismiss four months later. See also Lukehartv. State, 32 Ark. App. 152, 798 S.W.2d 117 (1990) (13-month delay in bringing a defendant to trial in municipal court for driving while intoxicated violated his right to a speedy trial, where the delay was caused by the transfer of the charge from circuit court to municipal court upon the charge's being reduced from felony to misdemeanor.) Cf. Millard v. Lynaugh,810 F.2d 1403 (5th Cir. 1987), cert. denied, 484 U.S. 838,108 S.Ct. 122, 98 L.Ed.2d 81 (1987) (where defendant's retrial was delayed 18 months, he was not denied of his right to speedy trial on constitutional grounds, because he had waived his rights under the state's speedy trial statute, had engaged in extended plea negotiations, and had shown no prejudice to his defense because of the delay); Roundtree v. State,192 Ga. App. 803, 386 S.E.2d 548 (1989) (20 months passed after filing of remittitur following defective first trial and retrial, because case files had inexplicably been put into the "closed" section and misfiling was not discovered until almost that long; however the appellant did not demand speedy trial during that period and was free on bond until he was convicted for another offense); Ake v. State, 778 P.2d 460 (Okla.Cr. 1989) (one-year delay between reversal of conviction and retrial did not constitute denial of speedy trial, because delay was largely due to defendant's hospitalization while undergoing testing to evaluate competency); Mitchell v. State, 572 So.2d 865 (Miss. 1990) (delay of 383 days between reversal of the original conviction and retrial was not denial of defendant's constitutional right to speedy trial, even though the person whose services the defendant allegedly engaged to commit murder was not available to testify at the retrial, because the court found that the record indicated no prejudice to the defendant, and it was in the defendant's best interest that the retrial be delayed so that both sides could attempt to secure the attendance of the missing witness); Harrison v. State,843 S.W.2d 157 (Tex.App. 1992) (six and one-half-year delay in the retrial of the defendant following reversal was held not to violate the appellant's constitutional right to a speedy trial because the appellate court's mandate of reversal was inexplicably lost upon its transfer to the district clerk and this "purely juridical-clerical" error could not be assigned to the prosecution; moreover, the defendant had been released on bond shortly after the reversal); United States v. Holley,986 F.2d 100 (5th Cir. 1993) (where defendant, who brought claim pursuant to Speedy Trial Act for denial of his right to speedy trial because of 180-day delay between conviction and reversal, was found not to have been denied his rights because the delay resulted from one judge's recusal, the subsequent judge's involvement in a lengthy trial, and the fact that the district court bench was 4 judges short of the necessary 10 judges).
Based on the foregoing, we hold that the appellant's right to a speedy trial was violated. The judgment of the trial court is reversed and a judgment rendered for the appellant.
REVERSED AND JUDGMENT RENDERED.
All Judges concur.