The sole issue presented in this case is whether the defendant's right to a speedy trial was violated.
This Court granted the defendant's petition for a writ of certiorari to the Court of Criminal Appeals, which had affirmed the defendant's convictions in the Mobile County Circuit Court for two counts of first degree sexual abuse and one count of second degree sexual abuse. The Court of Criminal Appeals did not issue an opinion in the case, see 550 So.2d 1086
(Ala.Cr.App. 1989); therefore, we are unaware of the reasons why that Court denied defendant any relief.
In regard to any claim by a defendant that his constitutional right to a speedy trial has been violated, a court must look at the specific facts and circumstances surrounding the particular claim and apply the four-part test set out in the landmark case of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972). Barker sets out these determinative factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay.
 FACTS
The facts are as follows: Defendant was initially arrested in August 1984, based on an indictment charging him with the same offenses that form the basis for his convictions in these cases. He appeared in court to answer the charges in September 1984, but at that time the charges were nol prossed on motion of the State. After those first charges were dismissed, the following events transpired:
 November 18, 1985 Defendant reindicted by the November 1985 Grand Jury of Mobile County for two (2) counts of first degree sexual abuse and one (1) count of second degree sexual abuse.
 November 19, 1985 Sheriff's Department's first attempt to serve the Defendant.
 March 1987 Second attempt by Sheriff's Department to locate defendant.
 August 6, 1987 Defendant arrested for the charges in the indictment at the place where he had worked for 18 years, and where he had been arrested on the 1984 indictment that was nol-prossed.
 August 17, 1987 Defendant entered a written plea of not guilty and waived arraignment.
 September 4, 1987 Defendant entered a plea of not guilty by reason of a mental defect.
 September 16, 1987 Defendant filed a motion to dismiss and demanded a speedy trial. *Page 106 
 January 8, 1988 Hearing on motion to dismiss held and motion taken under submission.
February 11, 1988 Motion to dismiss denied.
 April 7, 1988 Defendant entered a plea of guilty.[1]
 May 18, 1988 Defendant filed motion for a new trial in which he alleged: "The parties have agreed that the Defendant may take an appeal of the denial of the court of the Defendant's Motion to Dismiss, and the record is unclear on this matter."
July 1, 1988 Motion for new trial granted.
 July 1, 1988 Defendant entered a guilty plea to the charges. Defendant was convicted.
 September 1, 1988 July 1 conviction set aside; defendant pleaded guilty and upon conviction reserved right to appeal denial of motion to dismiss and defendant gave oral notice of appeal, as follows: "And thereupon in open court at the time of sentence, the defendant gave oral notice of appeal of the [c]ourt's previous ruling of February 11th, 1988, denying defendant's Motion to Dismiss filed September 16th, 1987, and moved the court to suspend the execution of the sentence pending appeal, and to fix the amount of an Appeal Bond."
 September 8, 1988 Defendant filed a written notice of appeal in all three cases.
It is apparent from the facts set out above that defendant's convictions of sexual abuse came almost three years after the return of the second indictment against him by the grand jury, and more than four years after the initial indictment had been returned and the defendant had been arrested thereon.
It is apparent from the record in this case that the defendant, shortly after his arrest on the second indictment, filed a motion to dismiss, in which he included as a ground for dismissal the allegation that his right to a "speedy trial" had been denied. The defendant asks this Court to review only the trial court's denial of his motion to dismiss the indictment on the "speedy trial" ground. While the defendant's convictions were based upon his entry of pleas of guilty to the charges, the record clearly shows that the trial judge, the district attorney, and the defendant all understood that he had the right to appeal the denial of his "speedy trial" claim.
It is apparent that defendant's conviction occurred more than four years after he was initially indicted on the charges.
He was arrested on the original indictment shortly after its return, at his place of employment in August 1984. As the facts set out above show, those charges were nol prossed on motion of the State's attorney in September 1984, and the defendant was not reindicted until November 18, 1985, over one year later.
The record shows that within a week of the return of the second indictment, the sheriff's department first attempted to serve it upon the defendant and to arrest him. According to testimony of sheriff's deputies, the sheriff returned the warrant because the address of defendant on the arrest warrant was inaccurate.[2] The record also shows that the sheriff had a task force that made an attempt to serve all outstanding arrest warrants, including the defendant's, during the latter part of *Page 107 
1986 and the early part of 1987.[3] The sheriff's justification for not finding the defendant was based on a claim that the address on the warrant was for a house number on Dewitt Street and that the numbering system on that street had been changed, and, although defendant had not moved, the house number may have changed.[4] There was no evidence presented to indicate that the defendant attempted to avoid service of the warrant, and the State does not attempt to justify the delay on this ground.
On August 7, 1987, the defendant was arrested at his place of employment. This was the same place of employment at which he had been arrested by the sheriff in 1984.[5]
 THE RIGHT TO A SPEEDY TRIAL
The State and the defendant agree on one point of law: The right to a speedy trial is triggered when a criminal prosecution has begun. Hayes v. State, 487 So.2d 987
(Ala.Cr.App. 1986), citing United States v. Marion,404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), in which the United States Supreme Court stated, inter alia:
 "[I]t is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."
United States v. Marion, 404 U.S. 307 at 320, 92 S.Ct. 455 at 463. We agree with the State that the defendant's right to a speedy trial was not triggered by the return of the 1984 indictment, because those charges were nol prossed by the State, but we are not persuaded that the dismissal of those charges, and the delay of over a year before the new indictment was returned, should be completely ignored.[6]
In order to decide the precise issue presented by this petition, we accept November 18, 1985, as the date when the defendant's constitutional right to a speedy trial began; that was the date when the second indictment was returned. Although the defendant was never tried, because he entered a plea of guilty, with leave to appeal his "speedy trial" claim, we consider that he was "tried" as of the date when he was convicted and sentenced on his plea of guilty on September 1, 1988.
The State and the defendant are in agreement that whether he was denied his right to a speedy trial must be determined in accordance with the four factors set forth in Barker v. Wingo,407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that is, (1) the length of the delay, (2) the reasons for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant resulting from the delay.
Applying these factors to the present facts, we find that the defendant was denied the right to a speedy trial.
(1) Length of delay. Whether the length of delay violates the right to a speedy trial is "necessarily dependent upon *Page 108 
the peculiar circumstances of the case." Barker v. Wingo,407 U.S. at 530, 531, 92 S.Ct. at 2192. Although the Barker Court recognized that the complexity of the charge would have a bearing on whether the length of delay was reasonable, we find that the offenses charged here are not unusually complex, and should not have required any extra preparation time beyond the time normally allotted to the State to prepare a case. Consequently, we find that under the facts of this case, the delay in this case was presumptively prejudicial.
(2) Reasons for the delay. It is clear from the facts presented here that the defendant has not shown that the State deliberately delayed his trial in order to gain a prosecutorial advantage.[7] The State argues that the delay was justified because the address on the arrest warrant was incorrect. Defendant argues that the evidence clearly shows that he lived at the same place where he lived when the first indictment was returned, and that he worked at the same place where he was arrested on the first indictment, and that the record is devoid of any evidence that he deliberately attempted to avoid service of the warrant. We interpret the evidence the same way. The delay, of course, was caused by the failure of the State to serve the arrest warrant on the defendant. The State argues that the delay was justified in this case because the sheriff's department diligently tried to serve the warrant on the defendant. We cannot excuse so easily the failure of the State to serve the warrant. The facts show that the defendant was finally arrested by the sheriff's department at his place of employment. He had been employed there for 18 years and had been arrested there by someone in the sheriff's department three years before on the same charges. Also, although it is not clear how the improper address was placed on the warrant, it is clear that this was not the fault of the defendant. The failure of the sheriff to serve the warrant was caused by the State's failure to ascertain the whereabouts of the defendant, who admittedly was not trying to evade service of process. The evidence shows that officers of the State responsible for discovering the place where defendant could be found did not attempt to find the defendant's former or present address or to make any attempt to locate him at his place of employment where he had been located before. We think this constitutes negligence by the State, and although negligence is not weighed as heavily against the State as deliberate delay, it nevertheless must be weighed against the State. Taylor v.State, 429 So.2d 1172 (Ala.Crim.App. 1983), cert. denied,464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326 (1983); consequently, we find that the State's neglect to arrest the defendant in this case in a timely manner is weighty enough to raise a presumption of prejudice to the defendant in this case.
(3) The defendant's assertion of his right. The defendant timely asserted his rights in this case by filing his motion to dismiss demanding a speedy trial approximately five weeks after his arrest. He testified that, prior to his arrest, he did not know that the charges were outstanding, and there is absolutely no evidence that he knew that he had been reindicted on the same charges that had been previously dismissed.
(4) Prejudice to the defendant. The defendant contends that he was prejudiced by the delay because, he says, his memory has faded. Although ordinarily a mere assertion of a loss of memory is not enough of a showing of prejudice to support a finding that a defendant has been denied due process, where the delay is excessive and is the result of unexcused inaction by the State, the delay is prima facie prejudicial. Murray v.Wainwright, 450 F.2d 465 (5th Cir. 1971); United States ex rel.Solomon v. Mancusi, 412 F.2d 88 (2d *Page 109 
Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236
(1969). We find that the delay in this case was of such length that defendant's right to a speedy trial has been violated. While the record does not show why the initial charges were dismissed, it would appear that defendant, at the time of the dismissal, had a right to assume that he would not be charged again, and unexcused inaction in a case involving alleged sexual misconduct involving children could be especially prejudicial to a defendant, because the prosecution must depend on the testimony of the alleged victims in many cases. Defendant entered a plea of guilty with a reservation of his right to insist on his "speedy trial" claim; the validity of that claim does not depend upon whether he is guilty or not guilty of the charges levied against him. The right to a speedy trial is a right guaranteed to every citizen by the state and federal constitutions and it acts as a limitation on State or Government action without regard to the guilt or innocence of the defendant, and in that regard is not unlike the right of a defendant to have illegal drugs excluded from evidence because they were obtained unconstitutionally by State or Government action.
Based upon the above, we find, under all the facts and circumstances of this case, that the defendant was denied his right to a speedy trial. In making this determination, of course, we do not decide whether the defendant is guilty of the charges levied against him. The judgments are reversed and the judgments are rendered for the defendant.
REVERSED AND JUDGMENTS RENDERED.
HORNSBY, C.J., and JONES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
SHORES, J., dissents.
[1] The plea of guilty was entered without the defendant's waiving his right to appeal in regard to his "speedy trial" claim. The record shows the following:
"Friday, May 6th, 1988
 "This day in open court came the State of Alabama by its District Attorney and thereupon in open court on this day; It is ordered by the Court that the Order of April 7th, 1988, be and the same is hereby amended EX [MERO MOTU], and by agreement of parties, to include defendant's reservation of his right to appeal the Court's ruling of February 11th, 1988, denying defendant's Motion to Dismiss filed September 16th, [1987]."
[2] There is nothing in the record to indicate that the petitioner was living in a different house or had attempted, in any manner, to avoid service, and the petitioner testified that he did not know that the indictments had been returned until he was arrested upon them in August 1987.
[3] There is some evidence that there may have been an attempt to serve this indictment in March 1987. The record is silent regarding the person or persons responsible for getting an address on the arrest warrant, or for checking with complaining witnesses to learn the whereabouts of the petitioner.
[4] The appellant had moved at one point from his mother's house to the house next door, but neither address was the one shown on the warrant, and there is nothing in the record to indicate why the officers of the State responsible for getting the correct address of persons charged in outstanding indictments were unaware of governmental action that may have changed the numbering scheme on Dewitt Street or that defendant was arrested on the first indictment at his place of employment.
[5] The record does not show why the sheriff had not attempted earlier to serve the second indictment on the defendant at the same place where the sheriff had served him with the first indictment.
[6] The record in this case does not show why that first indictment was nol prossed, but if it was nol prossed in order to give the State a prosecutorial advantage, then it would not be completely clear that the delay should not be counted in the total. Petitioner contends that this period of delay should be counted, but cites no authority and presented no evidence other than the fact that the original charges were nol prossed.
[7] Defendant does argue that the length of delay from the time of the return of the first indictment should be counted, but defendant has not shown the reasons why the State nol prossed the first indictment. We cannot assume that the indictment was nol prossed to give the State a prosecutorial advantage, but we cannot assume otherwise, either. The record just does not show why the indictment was dismissed on motion of the State and why the State decided to seek indictment again approximately one year later.